501 So.2d 171 (1987)
LOUIS WINER CO., INC., Appellant,
v.
SAN FRANCISCO MERCANTILE COMPANY, INC., Appellee.
No. 4-86-1363.
District Court of Appeal of Florida, Fourth District.
January 28, 1987.
*172 Kent S. Pratt of Cibula, Gaunt & Pratt, West Palm Beach, for appellant.
James M. Porter of Squire, Sanders & Dempsey, Miami, for appellee.
HERSEY, Chief Judge.
In a personal injury action resulting from combustion of a nightgown, the manufacturer-defendant-appellee filed a third-party complaint against appellant who sold elastic and ribbons used in the manufacture of the nightgown. The question is whether personal jurisdiction over appellant was effectively obtained under the Florida longarm statute.
The third-party complaint and affidavits filed by the respective parties established that for a period in excess of five years appellant has sold to appellee "fabric or material used in the production of" these nightgowns. Appellant is not licensed to do business in Florida and has no agents or offices here. The nightgown, incorporating products sold by appellant, arrived in Florida in the ordinary course of commerce.
The point of departure between the positions of the parties is demonstrated by these excerpts from affidavits submitted by the parties to the lower court:
Appellant "was not aware whether or not said product was defective, or whether it was to be shipped to Florida."
Appellee concludes that, based upon the "long term and substantial financial relationship" between the parties, appellant "is familiar with the intended use of the products it supplies San Francisco Mercantile."
Our inquiry is whether there has been a sufficient showing of activity on the part of appellant to satisfy the due process requirement of minimum contact with the State of Florida to support the acquisition of in personam jurisdiction by substituted service of process (long-arm statute).
*173 Although foreseeability that a defendant's product will or could be used in this state is a factor to be considered in determining the jurisdiction of Florida courts in an action arising out of the use of the product, it is not determinative. See Maschinenfabrik Seydelmann v. Altman, 468 So.2d 286 (Fla. 2d DCA), rev. denied, 476 So.2d 672 (Fla. 1985). It is also necessary, in order to meet the requirement of minimum contacts with the forum state, to examine whether the out-of-state defendant's business activities in Florida  whether engaged in directly or through others  are continuous and systematic. Ford Motor Co. v. Atwood Vacuum Machine Co., 392 So.2d 1305 (Fla.), cert. denied, 452 U.S. 901, 101 S.Ct. 3024, 69 L.Ed.2d 401 (1981). Thus, personal jurisdiction may be asserted "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," but not where the product's presence in that state is a single, isolated occurrence. Atwood, 392 So.2d at 1311, quoting from World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Examples of the latter are found in Seydelmann, 468 So.2d 286 (Fla. 2d DCA 1985) (defendant, German corporation, sold meat grinders in the U.S. only to a Massachusetts retailer. Where retailer had sold only twenty-three grinders to Florida customers in fourteen years, sufficient minimum contacts not shown to allow personal jurisdiction over German manufacturer), and Phoenix Trimming, Inc. v. Mowday, 431 So.2d 198 (Fla. 4th DCA) (where Illinois corporation manufactured webbing material sold to South Dakota corporation, which used it in manufacturing hot air balloons, and one of the balloons was later involved in an accident in Florida, there was insufficient showing of continuous, systematic business activities in Florida to justify personal jurisdiction over webbing manufacturer), rev. denied, 440 So.2d 352 (Fla. 1983).
Thus, two issues must be determined here: whether the record supports a finding of knowledge by appellant that its ribbon would be used in products which would be shipped to Florida in the ordinary course of commerce, and whether the movement of these products into Florida was systematic and continuous. As previously indicated, only the former is in dispute.
Atwood is the leading case in this area. In that case, Atwood, an Illinois corporation, manufactured door hinges for use in Ford automobiles, some of which were shipped to Florida. A Florida customer was injured by a faulty hinge and sued Ford, which in turn filed a third-party complaint against Atwood. The Florida Supreme Court found the minimum contacts test to be satisfied, and upheld jurisdiction.
In Atwood, however, it was undisputed that Atwood knew that some of the cars for which it supplied hinges would be sold in Florida. Appellant contends that this distinguishes Atwood from the present case, and mandates a different result because appellant's affidavit denies such knowledge and appellee's affidavit fails to adequately refute the denial by its allegations that its business dealings with appellant show that appellant had or should have had this knowledge.
Although not necessary to the result in Atwood, the court there discussed with approval a case from another jurisdiction indicating that knowledge that a component parts supplier's product will be used in other states may be inferred from the supplier's business dealings with the manufacturer of the completed product. In Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), an Illinois plaintiff was injured when a water heater exploded. The heater was manufactured in Pennsylvania and contained a safety valve made by an Ohio company which conducted no business in Illinois. Despite lack of any indication in the record as to the territory in which appliances incorporating the valves were marketed, the court concluded that:
it is a reasonable inference that its commercial transactions, like those of other *174 manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.
With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.
22 Ill.2d at 441, 442, 176 N.E.2d at 766. In Gray, as in the present case, there was no claim that the use of the valve manufacturer's product in Illinois constituted an isolated instance.
Two district court decisions have since applied Atwood in upholding jurisdiction over out-of-state component parts suppliers. In S.G.A. Scientific, Inc. v. Rhodes, 474 So.2d 425 (Fla. 1st DCA 1985), longarm jurisdiction was obtained over a New Jersey corporation which had cut glass for another New Jersey corporation to be used in a sight glass on a fuel tanker. The glass was then sold to a tanker manufacturer, and the glass subsequently shattered in Florida, injuring the plaintiff. As in Atwood, it was not disputed that the defendant knew the glass would be used out of state; but the court's holding that jurisdiction had been properly obtained was also based upon the systematic and continuous shipment of the defendant's glass into Florida as supporting knowledge by the defendant that its products would be used in Florida.
In a second case, Jacobson Manufacturing Co. v. Cross Manufacturing Co., 396 So.2d 825 (Fla. 4th DCA 1981), the defendant, a Kansas corporation, sold component parts for lawn sweepers to another Kansas corporation. One of the sweepers was shipped to Florida in the ordinary course of commerce and caused injury to the plaintiff. Based upon Atwood, this court found these facts sufficient to support an exercise of jurisdiction by the Florida court. Although not specifically discussed, it is implicit in the decision that knowledge may be inferred from the presence of an out-of-state component parts supplier's product in this state in the ordinary course of commerce.
We therefore affirm the trial court's order denying appellant's motion to dismiss the third-party complaint for lack of personal jurisdiction.
AFFIRMED.
ANSTEAD and DELL, JJ., concur.